UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CARMEN CIPOLLONI, individually and on behalf of all others similarly situated,

                Plaintiff,

            v.

CITY OF NEW YORK,

                Defendant.

**COMPLAINT**

Case No. 17-CV-3437

ECF Case

      COMES NOW THE PLAINTIFF, Carmen Cipolloni, individually and on behalf of all others similarly situated, by his attorneys, Steven M. Warshawsky and Tomasz J. Piotrowski, for his complaint against the defendant, City of New York, and alleging upon personal knowledge and information and belief as follows:

### NATURE OF THE CASE

      1.    This is a civil rights action under 42 U.S.C. § 1983 and New York state law arising from the plaintiff's arrest on March 17, 2016, by officers of the New York City Police Department. The plaintiff was arrested based on erroneous information contained in the NYPD database, specifically, a temporary order of protection that had been dismissed nearly two months earlier but which was reported in the database as active. There was no other basis for the plaintiff's arrest. The plaintiff was arrested without probable cause. The charge against the plaintiff was dismissed by the District Attorney's Office prior to criminal court arraignment, upon information and belief, after the prosecutor confirmed that the order of protection had been dismissed.

      2.    The plaintiff alleges that the NYPD and the City of New York know that the NYPD database contains erroneous information about expired, vacated, and dismissed

1

orders of protection.  The plaintiff further alleges that the NYPD and the City of New York know that innocent persons, like the plaintiff, are subjected to false arrest based on the erroneous information contained in the NYPD database.  The plaintiff further alleges that the false arrests caused by these database errors are numerous and frequent and occur throughout the City of New York.  The plaintiff further alleges that the NYPD and the City of New York are deliberately indifferent to the constitutional violations caused by these database errors and have failed to adopt policies and procedures necessary to prevent these constitutional violations.

3. By this action, the plaintiff is demanding, individually and on behalf of all others similarly situated, appropriate declaratory and injunctive relief to remedy and prevent the constitutional violations caused by these NYPD database errors, compensatory damages for the harms suffered by the plaintiff and others who have been falsely arrested as a result of these database errors, attorney's fees and costs, and all other available legal and equitable relief.  The plaintiff demands trial by jury.

## PARTIES

4. Plaintiff **Carmen Cipolloni** is an adult citizen of New York and resides in Bronx, New York.

5. Defendant **City of New York** is a municipality of the State of New York.  The NYC Corporation Counsel is Zachary Carter.  The main office of the Corporation Counsel is located at 100 Church Street, New York, New York, 10007.  The New York City Police Department is an agency or instrumentality of the City of New York.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because this action arises under the Constitution and civil rights laws of the United States.

7. This Court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because the plaintiff's federal and state law claims derive from a common nucleus of operative facts and form part of the same case or controversy under Article III of the U.S. Constitution.

8. This Court has venue over this action pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

9. There are no administrative exhaustion requirements for bringing the present civil action under 42 U.S.C. § 1983.

10. The plaintiff has satisfied the administrative exhaustion requirements for bringing the present civil action under New York state law. A valid notice of claim was served on the New York City Comptroller's Office within 90 days of Mr. Cipolloni's arrest. A 50-h hearing was conducted by the City on December 1, 2016. To date, the City has neglected or refused to settle this matter administratively. This civil action is being filed within one year and 90 days of the arrest.

## FACTUAL ALLEGATIONS

11. The events in this case took place on March 16-17, 2016.

12. In the evening on March 16, 2016, Mr. Cipolloni and his girlfriend were socializing at his apartment in Bronx, New York. They had an argument, and Mr. Cipolloni's girlfriend went home to her apartment in Queens, New York.

13. Later that evening, Mr. Cipolloni took a taxi to Queens to visit his girlfriend at her apartment and to make up with her. When he arrived, around 1:00 a.m., he tried calling her but she did not answer her cell phone. Mr. Cipolloni's girlfriend lives in a house that has been divided into apartments. Her apartment is located on the first floor. When she did not answer his calls, he knocked lightly on her window for a few minutes, but she did not respond. He then left.

14. Mr. Cipolloni went to a bar near his girlfriend's apartment and had one or two alcoholic drinks. He did not drink excessively and he was not intoxicated. He stayed at the bar for about one hour.

15. Sometime after 2:00 a.m. on March 17, 2017, Mr. Cipolloni returned to his girlfriend's apartment. While standing in the entryway to the house, which was unlocked and accessible to the public (for visiting persons living in the house, for mail delivery, etc.), Mr. Cipolloni called his girlfriend again and this time she answered and they started talking.

16. Mr. Cipolloni was not intoxicated. He was not conversing in a loud, abusive, or obscene manner. He was not acting in a violent, tumultuous, or threatening manner. He was not banging on the front door. He was not trespassing. He was not violating any laws or committing any crimes.

17. While Mr. Cipolloni was talking to his girlfriend, he saw the landlady standing at the top of the stairs looking at him. Upon information and belief, the landlady called the police. Within a few minutes, NYPD police officers arrived on the scene and detained Mr. Cipolloni and placed him inside a marked squad car.

18. The police officers who responded to the scene, while having Mr. Cipolloni in custody, ran a background check on him in the NYPD database, which reported that there was an order of protection against Mr. Cipolloni.

19. Upon information and belief, the NYPD database contained information about an order of protection that had been issued to Mr. Cipolloni on November 24, 2015, in connection with a previous complaint that Mr. Cipolloni's girlfriend had made against him. That complaint was dismissed and sealed on January 28, 2016, by motion of the District Attorney's Office, after Mr. Cipolloni's girlfriend requested that the charges be dismissed. At that time, Mr. Cipolloni's girlfriend acknowledged in writing that "I am aware that if the case is dismissed I will not have an order of protection."

20. The order of protection in question was a Temporary Order of Protection (TOOP) issued pursuant to C.P.L. § 530.12. This provision states, in relevant part: "An order of protection or a temporary order of protection issued pursuant to . . . this section shall bear in a conspicuous manner the term 'order of protection' or 'temporary order of protection' as the case may be and a copy shall be filed by the clerk of the court with the sheriff's office in the county in which the complainant resides, or, if the complainant resides within a city, with the police department of such city." C.P.L. § 530.12(6). The provision further states that "[s]uch order of protection shall plainly state the date that such order expires." Id. The provision further states that "[a]ny subsequent amendment or revocation of such order shall be filed in the same manner as herein provided." Id.

21. The TOOP issued to Mr. Cipolloni stated that "this order of protection shall remain in force until and including  5/23/16  [written by court]." The TOOP further stated: "If this is a Temporary Order, it shall expire on this date or upon the case's disposition, whichever comes first. Arresting Officer should confirm that this Order has not been modified or vacated prior to this date."

22. Upon information and belief, the database erroneously reported that the TOOP was still in effect. The officers ignored Mr. Cipolloni's statements to them that the TOOP had been dismissed. Upon information and belief, the officers questioned

5

Mr. Cipolloni's girlfriend about the TOOP, and she also told them that it had been dismissed. The police report for the incident identifies Mr. Cipolloni's girlfriend as the "Victim/Party 1 (P1)" and Mr. Cipolloni as the "Suspect/Party 2 (P2)" and states that "P1 has current valid order of protection against P2." This was not correct. By its terms, the TOOP issued to Mr. Cipolloni expired when the complaint against him was dismissed, which was nearly two months before the arrest in question. Mr. Cipolloni should not have been arrested, because, in fact, there was no "current valid order of protection" against him and he was not otherwise committing any crimes.

23. The officers arrested Mr. Cipolloni and charged him with criminal contempt for violating the order of protection. This was a false arrest because Mr. Cipolloni, in fact, was not violating any order of protection.

24. Upon information and belief, the arresting police officers in this case did not know that the TOOP had been dismissed because the NYPD database did not contain such information and because the policies and procedures adopted by the NYPD for handling cases involving orders of protection did not require the officers to confirm that the order of protection was still in effect, even after being advised by both parties that the TOOP had been dismissed.

25. The NYPD Patrol Guide Procedure No. 208-38, effective date 02/04/15, sets forth the policies and procedures adopted by the NYPD for handling cases involving orders of protection. The policy requires the officer to "[a]scertain from the complainant all available information concerning the order." The policy requires the officer to contact the Central Records Division, Identification Section "to verify that an Order of Protection was issued, court of issuance, specific conduct prohibited, and the expiration date." The policy states that "[t]he following information is obtainable through the database: a. Data relating to the person requesting the Order of protection (name, address, date of birth, etc).

b. Data relating to the person against whom the order runs (name, address, date of birth, etc).   c. The terms and conditions of the order.   d. Date and court of issuance, and date of expiration.   e. Whether the responded has been served with a copy of the order.   f. Additional comments regarding the parties involved and unique terms of the order."

26. Upon information and belief, all of the information contained in the NYPD database relates to the original issuance of an order of protection.  Upon information and belief, the database does not contain information about whether an order of protection subsequently was modified, vacated, or dismissed.  Upon information and belief, the database contains the original expiration date for the order of protection entered by the court [in this case, 5/23/16], but does not report that a temporary order of protection expires "upon the case's disposition" [in the words of the TOOP in this case].  Upon information and belief, the database contains no information about the disposition of the case for which the order of protection was issued.  Upon information and belief, even if the NYPD receives information that an order of protection has been modified, vacated, or dismissed, this information is not properly and timely entered into the NYPD database.  Furthermore, nothing in the NYPD policy requires the arresting officer to confirm that an order of protection "has not been modified or vacated prior to" the original expiration date [in the words of the TOOP in this case].  Consequently, the database, by design and operation, contains erroneous information about orders of protection that no longer are in effect but which are reported as active – causing innocent persons to be arrested and have their constitutional and state law rights violated.

27. Upon information and belief, the NYPD and the City of New York are aware that the NYPD database contains erroneous information about expired orders of protection and that this results in innocent persons, like Mr. Cipolloni, being arrested.  The scope of this problem is impossible to determine without discovery because, as happened here, these

cases typically are dismissed before arraignment, once the ADA determines the true status of the order of protection in question. Nevertheless, previous civil lawsuits have highlighted the problem of persons being improperly arrested for violating orders of protection that, in fact, were not in effect. See, e.g., Welch v. City of New York, et al., No. 95-CV-8953 (RPP), 1997 WL 436382 (S.D.N.Y. Aug. 4, 1997); Valcarcel v. City of New York, et al., No. 13-CV-1740 (KAM) (CLP), 2014 WL 4370858 (E.D.N.Y. Sept. 2, 1014).

28. Following his arrest, Mr. Cipolloni was taken by the police to Mount Sinai Hospital in Queens, because he was experiencing severe anxiety triggered by the arrest. Mr. Cipolloni is a member of the U.S. Army Reserves who has served in Afghanistan and he has been diagnosed with post-traumatic stress disorder relating to his military service.

29. Around 6:00 a.m., after being treated at the hospital, Mr. Cipolloni was taken to the precinct and booked (searched, fingerprinted, photographed, etc.). He was placed inside a holding cell, which triggered a panic attack. His requests for further medical attention were ignored.

30. After several hours at the precinct, Mr. Cipolloni was taken to the courthouse for his arraignment. After waiting at the courthouse for several more hours, the District Attorney's Office dismissed the charges against Mr. Cipolloni prior to criminal court arraignment, upon information and belief, after the prosecutor confirmed that the order of protection had been dismissed. Mr. Cipolloni was released from custody around 7:00 p.m.

31. As a result of the defendant's unlawful conduct, Mr. Cipolloni suffered loss of liberty, physical pain and suffering (from being handcuffed and confined in jail cells), emotional pain and suffering, and other pecuniary and non-pecuniary injuries, for which he is entitled to an award of compensatory damages.

## CLASS ACTION ALLEGATIONS

32.     The plaintiff brings this action as a class action under Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3) on behalf of himself and all others similarly situated whose federal and state law rights have been violated by the failure of the NYPD and the City of New York to maintain an accurate database for orders of protection.

33.     The Class is composed of all persons, during the applicable statute of limitations periods, who were arrested for violating an expired, vacated, or dismissed order of protection that was erroneously reported in the NYPD database as active.

34.     Upon information and belief, the Class is so numerous that joinder of all Class members is impracticable.

35.     There are questions of law or fact common to the Class, including (i) whether the NYPD and the City of New York know that the NYPD database erroneously reports expired, vacated, or dismissed orders of protection as active, (ii) whether the NYPD and the City of New York know that innocent persons are being falsely arrested based on the erroneous information contained in the NYPD database, (iii) whether the NYPD and the City of New York are deliberately indifferent to the constitutional violations caused by these database errors, and (iv) whether the NYPD and the City of New York have failed to adopt policies and procedures necessary to prevent these constitutional violations.

36.     The plaintiff's claims are typical of the claims of the Class.

37.     The plaintiff and his attorneys will fairly and adequately protect the interests of the Class.  Plaintiff counsel are experienced civil rights attorneys with class action litigation experience.

38. The defendant has acted or refused to act on grounds that apply generally to the Class, thereby making final declaratory and injunctive relief appropriate with respect to the Class as a whole. See Fed. R. Civ. P. 23(b)(2).

39. Questions of law or fact common to the Class predominate over any questions affecting only individual members. See Fed. R. Civ. P. 23(b)(3).

40. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy. See Fed. R. Civ. P. 23(b)(3).

## CLAIMS AGAINST CITY OF NEW YORK

34. Based on the factual allegations set forth above, along with reasonable inferences drawn in the plaintiff's favor, defendant City of New York is liable to the plaintiff and the Class members under federal and state law, as follows:

35. Count One: unlawful seizure in violation of the Fourth Amendment of the U.S. Constitution, pursuant to 42 U.S.C. § 1983, for subjecting the plaintiff and the Class members to being arrested without probable cause based on the NYPD database erroneously reporting expired, vacated, or dismissed orders of protection as active. The City of New York is directly liable for these violations pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), and its progeny, because the City knows that the design and operation of the NYPD database, which contains erroneous and out-of-date information, results in innocent persons being falsely arrested for violating expired orders of protection and the City has failed to adopt policies and procedures necessary to prevent these constitutional violations.

36. Count Two: false arrest in violation of New York state law, for subjecting the plaintiff and the Class members to being arrested without probable cause based on the NYPD database erroneously reporting expired, vacated, or dismissed orders of protection as

active.  The City of New York is directly liable for these violations, because the City knows that the design and operation of the NYPD database, which contains erroneous and out-of-date information, results in innocent persons being falsely arrested for violating expired orders of protection and the City has failed to adopt policies and procedures necessary to prevent these constitutional violations.  The City also is vicariously liable for the false arrests committed by individual police officers based on the NYPD database erroneously reporting expired, vacated, or dismissed orders of protection as active.

37. Count Three:  negligence in violation of New York state law, for subjecting the plaintiff and the Class members to being arrested without probable cause based on the NYPD database erroneously reporting expired, vacated, or dismissed orders of protection as active.  The City of New York is directly liable for these violations, because the City has breached its duty to maintain and operate the NYPD database in a manner that does not cause innocent persons to be falsely arrested for violating expired orders of protection, causing injury to the plaintiff and the Class members.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, plaintiff Carmen Cipolloni hereby demands a trial by jury as to all issues triable by jury in the above-captioned civil action.

## **PRAYER FOR RELIEF**

WHEREFORE the plaintiff demands judgment against the defendant for:

A. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) on behalf of the plaintiff and all other similarly situated persons, during the applicable statute of limitations periods, who were arrested for violating an expired, vacated, or dismissed order of protection that was erroneously reported in the NYPD database as active;

B. Designation of the plaintiff and his counsel as representatives of the Rule 23 Class members;

C. A judgment declaring that the defendant is liable for violating the plaintiff's and Class members' federal and state law rights, as alleged herein;

D. An order imposing appropriate injunctive relief on the defendant to remedy and prevent the federal and state law violations alleged herein;

E. Compensatory damages for the plaintiff and Class members, in an amount to be proved at trial;

F. Pre-judgment and post-judgment interest as allowed by law;

G. Attorney's fees, costs, and disbursements as allowed by law; and

    H.      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated:    June 8, 2017
              New York, NY

                                            Respectfully submitted,

                                            *Steven M. Warshawsky*

By:    _____
        STEVEN M. WARSHAWSKY (SW 5431)
        The Warshawsky Law Firm
        Empire State Building
        350 Fifth Avenue, 59th Floor
        New York, NY  10118
        Tel:  (212) 601-1980
        Fax:  (212) 601-2610
        Email:  smw@warshawskylawfirm.com

        TOMASZ J. PIOTROWSKI (TP 5515)
        T.J. Piotrowski Law Firm
        176 Kent Street, Suite 2L
        Brooklyn, NY 11222
        Tel:  (917) 612-0788
        Email: tomjerzy@msn.com

        *Attorneys for Plaintiff Carmen Cipolloni*